## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| David Finch and Ashley Finch, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 2:21-cv-2571 |
| | ) | |
| v. | ) | |
| | ) | |
| Equifax Information Services LLC, | ) | **COMPLAINT** |
| Experian Information Solutions, Inc., and | ) | |
| 21st Mortgage Corporation, | ) | **WITH JURY TRIAL DEMAND** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.     The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.     The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA,

Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.   David Finch ("Plaintiff David") and Ashley Finch ("Plaintiff Ashley") (collectively referred to as "Plaintiffs"), by Plaintiffs' attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and 21st Mortgage Corporation ("21st Mortgage") (jointly referred to as "Defendants") with regard to inaccurate and/or materially misleading credit information and Defendants' failure to properly investigate Plaintiffs' disputes.

4.   Defendants failed to properly investigate Plaintiffs' disputes, damaging Plaintiffs' creditworthiness.

5.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.   Unless otherwise stated, all of the conduct engaged in by Defendants took place in Kansas.

7.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8.   Through this Complaint, Plaintiffs do not allege that any state court judgment was entered against anyone in error, and Plaintiffs do not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

9.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

10.   This Court has federal question jurisdiction because this case arises out of Defendants'

violations of federal law—the FCRA.

11.   Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiffs' claims occurred in Kansas.

12.   Defendants are subject to the Court's personal jurisdiction, as Defendants each conduct business within Kansas, and Defendants' conduct giving rise to this action accrued in Kansas.

13.   Plaintiffs are informed and believe and thereon allege that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

14.   Upon information and belief, Equifax was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Equifax is liable to Plaintiffs for the relief prayed for herein.

15.   Upon information and belief, Experian was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Experian is liable to Plaintiffs for the relief prayed for herein.

16.   Upon information and belief, 21st Mortgage was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which 21st Mortgage is liable to Plaintiffs for the relief prayed for herein.

**PARTIES**

9.    Defendant Equifax is an entity doing business in the State of Kansas.

10.     Defendant Equifax's registered agent address is: Corporation Service Company, 2900 SW Wanamaker Dr., Ste. 204, Topeka, KS 66614.

11.     Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

12.     Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

13.     Unless otherwise indicated, the use of Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

14.     Defendant Experian is an entity doing business in the State of Kansas.

15.     Defendant Experian's registered agent address is: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

16.     Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

17.     Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

18.     Unless otherwise indicated, the use of Experian's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

19.     Defendant 21st Mortgage is an entity doing business in the state of Kansas.

20.     Defendant 21st Mortgage is a limited liability company formed under the laws of the State of Delaware and doing business nationwide, including in the state of Kansas.

21.     21st Mortgage's registered agent address is: Corporation Service Company, 2900 SW

Wanamaker Dr., Topeka, KS 66614.

22.     21st Mortgage regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiffs' transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

23.     Unless otherwise indicated, the use of 21st Mortgage's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of 21st Mortgage.

## FACTUAL ALLEGATIONS

17.     On or about August 30, 2017, Plaintiffs obtained a residential home mortgage from 21st Mortgage for the original principal amount of $26,648.00 (the "Mortgage").

18.     As indicated on the consumer loan note, security agreement, and disclosure statement underlying and memorializing the Mortgage, the loan term is 180 months.

19.     The Mortgage is collateralized by a manufactured home located at 107 Monterey Ln., #181, Olathe, KS 66061, as evidenced by the title and registration receipt maintained with the Kansas Department of Revenue.

20.     On or about March 13, 2019, Plaintiffs filed a Chapter 13 Bankruptcy petition in the United States District Court for the District of Kansas, Case Number 19-20458 (the "Bankruptcy Case").

21.     Plaintiffs filed their Chapter 13 Plan in the Bankruptcy Case on or about March 13, 2019 (the "Bankruptcy Plan").

22.     On or about May 5, 2019, the bankruptcy court entered an Order confirming the Bankruptcy Plan.

23.     Pursuant to the terms of the confirmed Bankruptcy Plan, Plaintiffs are required to pay their Mortgage payments directly to 21st Mortgage.

24.     Plaintiffs have faithfully made their monthly payments to 21st Mortgage directly, as required by the terms of their confirmed Bankruptcy Plan.

25.     As a secured debt which will mature *after* the completion of the Bankruptcy, the Mortgage is considered to be a "Long Term Debt Not Subject to Discharge" pursuant to 11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1328(a)(1).

26.     This designation and treatment of the Mortgage in the Bankruptcy Case means that the Mortgage remains largely unaffected by the Bankruptcy Case.

27.     However, Defendants reported the mortgage on Plaintiffs' Equifax and Experian credit reports in an inaccurate and/or materially misleading way.

28.     Plaintiffs' creditors and potential creditors have accessed Plaintiffs' Equifax and Experian credit reports while the misreporting described herein was on Plaintiffs' credit reports and were misinformed by Defendants about Plaintiffs' credit worthiness.

### 21st Mortgage and Equifax's Inaccurate Reporting on Plaintiff David's Equifax Credit Report

29.     Plaintiff David reviewed a copy of his consumer report as published by Equifax on or about December 30, 2020 ("David's Equifax Credit Report").

30.     Upon Plaintiff David's review of the tradeline associated with the Mortgage (the "Account") on David's Equifax Credit Report, Plaintiff David found that 21st Mortgage and Equifax were reporting numerous incorrect remarks regarding the Account.

31.     The Account on David's Equifax Credit Report was reporting as closed, with no balance, monthly payment, or payment history information, a status of "Included in Chapter 13", and comments stating, "Bankruptcy chapter 13" and "Bankruptcy petition".

32.   Additionally, the Account reported a date of delinquency first reported as March 1, 2019.

33.   However, Plaintiff David had a balance he was paying down on a monthly basis directly to 21st Mortgage and Plaintiff David was not delinquent in March 2019 or at any time around March 2019.

34.   By reporting the Account as closed with no balance, monthly payment amount, or payment history information, along with reporting the Account to include bankruptcy information and a date of delinquency first reported that was consistent with the month Plaintiff David filed the Bankruptcy Case, 21st Mortgage and Equifax created the false impression that the Mortgage would be or had already been discharged through the Bankruptcy Case when that was not true.

35.   It is illegal and inaccurate for 21st Mortgage and Equifax to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

36.   It is illegal and inaccurate for 21st Mortgage and Equifax to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

37.   However, 21st Mortgage and Equifax either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information after the Bankruptcy Case was initiated as discussed herein.

### *Plaintiff David's Dispute to Equifax*

38.   On or after March 23, 2021, Plaintiff David disputed Equifax's reporting of the Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

39.     Plaintiff David sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading derogatory information be updated, modified, or corrected as to the 21st Mortgage Account ("David's Equifax Dispute").

40.     Specifically, Plaintiff David explained in David's Equifax Dispute that the Account bore a current balance and monthly payment, that he had been timely making all required payments after the date the Bankruptcy Case was filed, and that 21st Mortgage and Equifax's reporting that the Account was included in bankruptcy with no balance or payment information was false and/or misleading.

41.     Plaintiff David attached supporting documents to David's Equifax Dispute, including a copy of his confirmed Chapter 13 Plan from the Bankruptcy Case which showed that Plaintiff David was to make his monthly mortgage payments directly to 21st Mortgage.

42.     Equifax received David's Equifax Dispute.

43.     Upon receipt of David's Equifax Dispute, Equifax was required to conduct a reinvestigation into the Account on Plaintiff David's consumer report pursuant to 15 U.S.C. § 1681i.

44.     Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify 21st Mortgage of David's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with David's Equifax Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the Account or delete it from Plaintiff David's consumer file.

45.     Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

46.    Upon information and belief, Equifax notified 21st Mortgage of David's Equifax Dispute.

47.    Upon information and belief, 21st Mortgage received notice of David's Equifax Dispute as to the reporting of the Account on David's Equifax Credit Report.

48.    A reasonable investigation by Equifax and 21st Mortgage would have indicated that they were reporting the Account inaccurately, incompletely, and/or in a materially misleading way on David's Equifax Credit Report.

### The Continued Inaccurate Reporting of the Account after Plaintiff David's Equifax Dispute

49.    On or after April 4, 2021, Plaintiff David received dispute results from Equifax dated April 4, 2021 ("David's Equifax Dispute Results").

50.    21st Mortgage and Equifax failed to remove or correct the inaccurately and/or incompletely reported information contained on the Account.

51.    Instead, on David's Equifax Dispute Results, 21st Mortgage and Equifax continued to inaccurately and/or incompletely report the Account.

52.    Specifically, 21st Mortgage and Equifax continued to report the Account with no balance or monthly payment amount, they continued to omit any payment history, a status of "Included in Wage Earner Plan" and comments stating, "Bankruptcy chapter 13" and "Bankruptcy petition".

53.    The Account was not included in Plaintiff's wage earner plan.

54.    21st Mortgage and Equifax reporting was inaccurate, incomplete, and/or materially misleading because the result of its reporting was to make it appear as if the Account had been or would be discharged through the Bankruptcy Case, that no balance or monthly payment was owed, and that Plaintiff David had not made any payments on the Account.

55.    21st Mortgage and Equifax's continued inaccurate, incomplete, and/or materially

misleading reporting and failures to investigate or correct the inaccurately reported information on the Account were particularly egregious in that David's Equifax Dispute included supporting documents, which 21st Mortgage and Equifax chose to ignore.

### 21st Mortgage and Equifax's Inaccurate Reporting on Plaintiff Ashley's Equifax Credit Report

56.  Plaintiff Ashley reviewed a copy of her consumer report as published by Equifax on or about December 30, 2020 ("Ashley's Equifax Credit Report").

57.  Upon Plaintiff Ashley's review of the Account on Ashley's Equifax Credit Report, Plaintiff Ashley found that 21st Mortgage and Equifax were reporting numerous incorrect remarks regarding the Account.

58.  The Account on Ashley's Equifax Credit Report was reporting as closed, with no balance, monthly payment, or payment history information, a status of "Included in Chapter 13" and comments stating, "Bankruptcy chapter 13" and "Bankruptcy petition".

59.  Additionally, the Account reported a date of delinquency first reported as March 1, 2019.

60.  However, Plaintiff Ashley had a balance she was paying down on a monthly basis directly to 21st Mortgage and Plaintiff Ashley was not delinquent in March 2019 or at any time around March 2019.

61.  By reporting the Account as closed with no balance, monthly payment amount, or payment history information, along with reporting the Account to include bankruptcy information and a date of delinquency first reported that was consistent with the month Plaintiff Ashley filed the Bankruptcy Case, 21st Mortgage and Equifax created the false impression that the Mortgage would be or had already been discharged through the Bankruptcy Case when that was not true.

62.  It is illegal and inaccurate for 21st Mortgage and Equifax to report any derogatory

collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

63.     It is illegal and inaccurate for 21st Mortgage and Equifax to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

64.     However, 21st Mortgage and Equifax either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information after the Bankruptcy Case was initiated as discussed herein.

*Plaintiff Ashley's Dispute to Equifax*

65.     On or after March 23, 2021, Plaintiff Ashley disputed Equifax's reporting of the Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

66.     Plaintiff Ashley sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading derogatory information be updated, modified, or corrected as to the 21st Mortgage Account ("Ashley's Equifax Dispute").

67.     Specifically, Plaintiff Ashley explained in Ashley's Equifax Dispute that the Account bore a current balance and monthly payment, that she had been timely making all required payments after the date the Bankruptcy Case was filed, and that 21st Mortgage and Equifax's reporting that the Account was included in bankruptcy with no balance or payment information was false and/or misleading.

68.     Plaintiff Ashley attached supporting documents to Ashley's Equifax Dispute, including a copy of his confirmed Chapter 13 Plan from the Bankruptcy Case which showed that Plaintiff Ashley was to make her monthly mortgage payments directly to 21st Mortgage.

69.   Equifax received Ashley's Equifax Dispute.

70.   Upon receipt of Ashley's Equifax Dispute, Equifax was required to conduct a reinvestigation into the Account on Plaintiff Ashley's consumer report pursuant to 15 U.S.C. § 1681i.

71.   Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify 21st Mortgage of Ashley's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Ashley's Equifax Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the Account or delete it from Plaintiff Ashley's consumer file.

72.   Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

73.   Upon information and belief, Equifax notified 21st Mortgage of Ashley's Equifax Dispute.

74.   Upon information and belief, 21st Mortgage received notice of Ashley's Equifax Dispute as to the reporting of the Account on Ashley's Equifax Credit Report.

75.   A reasonable investigation by Equifax and 21st Mortgage would have indicated that they were reporting the Account inaccurately, incompletely, and/or in a materially misleading way on Ashley's Equifax Credit Report.

### The Continued Inaccurate Reporting of the Account after
### Plaintiff Ashley's Equifax Dispute

76.   On or after April 10, 2021, Plaintiff Ashley received dispute results from Equifax dated April 10, 2021 ("Ashley's Equifax Dispute Results").

77.   21st Mortgage and Equifax failed to remove or correct the inaccurately and/or incompletely reported information contained on the Account.

78.    Instead, on Ashley's Equifax Dispute Results, 21st Mortgage and Equifax continued to inaccurately and/or incompletely report the Account.

79.    Specifically, 21st Mortgage and Equifax continued to report the Account with no balance or monthly payment amount, they continued to omit any payment history, a status of "Included in Wage Earner Plan" and comments stating, "Bankruptcy chapter 13" and "Bankruptcy petition".

80.    The Account was not included in Plaintiff's wage earner plan.

81.    21st Mortgage and Equifax reporting was inaccurate, incomplete, and/or materially misleading because the result of its reporting was to make it appear as if the Account had been or would be discharged through the Bankruptcy Case, that no balance or monthly payment was owed, and that Plaintiff Ashley had not made any payments on the Account.

82.    21st Mortgage and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Account were particularly egregious in that Ashley's Equifax Dispute included supporting documents, which 21st Mortgage and Equifax chose to ignore.

*21st Mortgage and Experian's Inaccurate Reporting on*
*Plaintiff David's Experian Credit Report*

83.    Plaintiff David reviewed a copy of his consumer report as published by Experian on or about December 30, 2020 ("David's Experian Credit Report").

84.    Upon Plaintiff David's review of the Account on David's Experian Credit Report, Plaintiff David found that 21st Mortgage and Experian were reporting numerous incorrect remarks regarding the Account.

85.    David's 21st Mortgage Account tradeline on David's Experian Credit Report was reporting no balance, a monthly payment of $0, a payment history that stopped the month

prior to the date the Bankruptcy Case was filed, and a Status of "Petition for Chapter 13 Bankruptcy/Never Late."

86.    However, Plaintiff David had a balance he was paying down on a monthly basis directly to 21st Mortgage and Plaintiff David was not delinquent in March 2019 or at any time around March 2019.

87.    By failing to report a balance, monthly payment amount, or payment history past the date that the Bankruptcy Case was filed, and by reporting the Account to include bankruptcy information, 21st Mortgage and Experian created the false impression that the Mortgage would be or had already been discharged through the Bankruptcy Case when that was not true.

88.    It is illegal and inaccurate for 21st Mortgage and Experian to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

89.    It is illegal and inaccurate for 21st Mortgage and Experian to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

90.    However, 21st Mortgage and Experian either reported or caused to be reported inaccurate information after the Bankruptcy Case was initiated as discussed herein.

### *Plaintiff David's First Dispute to Experian*

91.    On or after March 23, 2021, Plaintiff disputed Experian's reporting of the Account pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

92.    Plaintiff David sent a letter to Experian requesting the above inaccurate and incorrect

derogatory information be updated, modified, or corrected as to the Account ("David's First Experian Dispute").

93.     Specifically, Plaintiff David explained in David's First Experian Dispute that the Account bore a current balance and monthly payment, that he had been timely making all required payments after the date the Bankruptcy Case was filed, and that 21st Mortgage and Experian's reporting that David's 21st Mortgage Account was included in bankruptcy with no balance or payment information was false and/or misleading.

94.     Plaintiff attached supporting documents to David's First Experian Dispute, including a copy of his confirmed Chapter 13 Plan from the Bankruptcy Case which showed that Plaintiff David was to make his monthly mortgage payments directly to 21st Mortgage.

95.     Experian received David's First Experian Dispute.

96.     Upon receipt of David's First Experian Dispute, Experian was required to conduct a reinvestigation into David's 21st Mortgage Account on David's consumer report pursuant to 15 U.S.C. § 1681i.

97.     Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify 21st Mortgage of David's First Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with David's First Experian Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff David's consumer file.

98.     Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

99.     Upon information and belief, Experian notified 21st Mortgage of David's First Experian

Dispute.

100.   Upon information and belief, 21st Mortgage received notice of David's First Experian Dispute as to the reporting of the Account on David's Experian Credit Report.

101.   A reasonable investigation by Experian and 21st Mortgage would have indicated that they were reporting the Account inaccurately, incompletely, and/or in a materially misleading way on David's Experian Credit Report.

*Plaintiff David's Second Dispute to Experian*

102.   On or after July 1, 2021, Plaintiff David again disputed Experian's reporting of the Account on his Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

103.   Plaintiff David sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the Account ("David's Second Experian Dispute").

104.   Specifically, Plaintiff David explained in David's Second Experian Dispute that the Account bore a current balance and monthly payment, that he had been timely making all required payments directly to 21st Mortgage after the date the Bankruptcy Case was filed, and that 21st Mortgage and Experian's reporting that the Account was included in bankruptcy with no balance or payment information was false and/or misleading.

105.   Plaintiff attached supporting documents to David's Second Experian Dispute, including a copy of a monthly mortgage statement provided to him by 21st Mortgage as well as another copy of his confirmed Chapter 13 Plan from the Bankruptcy Case which showed that he was to make his monthly mortgage payments directly to 21st Mortgage.

106.   Experian received David's Second Experian Dispute.

107.   Upon receipt of David's Second Experian Dispute, Experian was required to conduct a reinvestigation into the Account on Plaintiff David's consumer report pursuant to 15 U.S.C. § 1681i.

108.   Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify 21st Mortgage of David's Second Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with David's Second Experian Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff David's consumer file.

109.   Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

110.   Upon information and belief, Experian notified 21st Mortgage of David's Second Experian Dispute.

111.   Upon information and belief, 21st Mortgage received notice of David's Second Experian Dispute as to the reporting of the Account on Plaintiff David's Experian consumer report.

112.   A reasonable investigation by Experian and 21st Mortgage would have indicated that they were reporting the Account inaccurately on Plaintiff David's consumer report.

113.   However, the inaccurate, incomplete, false, and/or misleading information continued to be reported on Plaintiff David's Experian consumer report.

### The Continued Inaccurate Reporting of the Account after
### Plaintiff David's Second Experian Dispute

114.   On or after August 19, 2021, Plaintiff David again accessed his consumer report as published by Experian ("David's August Experian Report").

115.   21st Mortgage and Experian failed to remove or correct the inaccurately and/or

incompletely reported information contained on the Account.

116.  Instead, on David's August Experian Report, 21st Mortgage and Experian continued to inaccurately and/or incompletely report the Account.

117.  Specifically, 21st Mortgage and Experian continued to report the Account with no balance or monthly payment amount, they continued to omit any payment history past the month the Bankruptcy Case was filed, and they continued to report the account as "Petition for Chapter 13 Bankruptcy/Never late".

118.  21st Mortgage and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of its reporting was to make it appear as if the Account had been or would be discharged through the Bankruptcy Case, that no balance or monthly payment was owed, and that Plaintiff David had not made any payments since or before his Bankruptcy Case was filed.

119.  21st Mortgage and Experian's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Account were particularly egregious in that David's Second Experian Dispute included supporting documents provided by 21st Mortgage which 21st Mortgage and Experian chose to ignore.

### 21st Mortgage and Experian's Inaccurate Reporting on Plaintiff Ashley's Experian Credit Report

120.  Plaintiff Ashley reviewed a copy of her consumer report as published by Experian on or before December 30, 2020 ("Ashley's Experian Credit Report").

121.  Upon Plaintiff Ashley's review of the Account, she found that 21st Mortgage and Experian were reporting numerous incorrect remarks regarding the Account.

122.  The Account Ashley's Experian Credit Report was reporting no balance, a monthly

payment of $0, a payment history that stopped the month prior to the date the Bankruptcy

Case was filed, and a Status of "Petition for Chapter 13 Bankruptcy/Never Late."

123.     By failing to report a balance, monthly payment amount, or payment history past the date

that the Bankruptcy Case was filed, and by reporting the Account to include bankruptcy

information, 21st Mortgage and Experian created the false impression that the Mortgage

would be or had already been discharged through the Bankruptcy Case when that was not

true.

124.     It is illegal and inaccurate for 21st Mortgage and Experian to report any derogatory

collection information which is inconsistent with the Orders entered by the Bankruptcy

Court.

125.     It is illegal and inaccurate for 21st Mortgage and Experian to report any derogatory

collection information which was factually incorrect and/or materially misleading.

126.     However, 21st Mortgage and Experian either reported or caused to be reported inaccurate,

incomplete, and/or materially misleading information after the Bankruptcy was filed as

discussed herein.

### *Plaintiff Ashley's First Dispute to Experian*

127.     On or after March 23, 2021, Plaintiff Ashley disputed Experian's reporting of the Account

pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and

inaccurate credit information.

128.     Plaintiff Ashley sent a letter to Experian requesting the above inaccurate and incorrect

derogatory information be updated, modified, or corrected as to the Account ("Ashley's

First Experian Dispute").

129.     Specifically, Plaintiff Ashley explained in Ashley's First Experian Dispute that the

Account bore a current balance and monthly payment, that she had been timely making all required payments after the date the Bankruptcy Case was filed, and that 21st Mortgage and Experian's reporting that the Account was included in bankruptcy with no balance or payment information was false and/or misleading.

130. Plaintiff Ashley attached supporting documents to the Experian Dispute, including a copy of her confirmed Chapter 13 Plan from the Bankruptcy Case which showed that Plaintiff Ashley was to make her monthly mortgage payments directly to 21st Mortgage.

131. Experian received Ashley's First Experian Dispute.

132. Upon receipt of Ashley's First Experian Dispute, Experian was required to conduct a reinvestigation into the Account on Ashley's consumer report pursuant to 15 U.S.C. § 1681i.

133. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify 21st Mortgage of Ashley's First Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Ashley's First Experian Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff Ashley's consumer file.

134. Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

135. Upon information and belief, Experian notified 21st Mortgage of Ashley's First Experian Dispute.

136. Upon information and belief, 21st Mortgage received notice of Ashley's First Experian Dispute as to the reporting of the Account on Plaintiff Ashley's Experian Credit Report.

137.  A reasonable investigation by Experian and 21st Mortgage would have indicated that they were reporting the Account inaccurately, incompletely, and/or in a materially misleading way on the Experian Credit Report.

*Plaintiff Ashley's Second Dispute to Experian*

138.  On or after July 1, 2021, Plaintiff Ashley again disputed Experian's reporting of the Account on her Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

139.  Plaintiff Ashley sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the Account ("Ashley's Second Experian Dispute").

140.  Specifically, Plaintiff Ashley explained in Ashley's Second Experian Dispute that the Account bore a current balance and monthly payment, that she had been timely making all required payments directly to 21st Mortgage after the date the Bankruptcy Case was filed, and that 21st Mortgage and Experian's reporting that the Account was included in bankruptcy with no balance or payment information was false and/or misleading.

141.  Plaintiff attached supporting documents to the Ashley's Second Experian Dispute, including a copy of a monthly mortgage statement provided to her by 21st Mortgage as well as another copy of her confirmed Chapter 13 Plan from the Bankruptcy Case which showed that she was to make her monthly mortgage payments directly to 21st Mortgage.

142.  Experian received Ashley's Second Experian Dispute.

143.  Upon receipt of Ashley's Second Experian Dispute, Experian was required to conduct a reinvestigation into the Account on Plaintiff Ashley's consumer report pursuant to 15 U.S.C. § 1681i.

144.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify 21st Mortgage of Ashley's Second Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Ashley's Second Experian Dispute for 21st Mortgage's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff Ashley's consumer file.

145.    Pursuant to 15 U.S.C. § 1681s-2(b), 21st Mortgage had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

146.    Upon information and belief, Experian notified 21st Mortgage of Ashley's Second Experian Dispute.

147.    Upon information and belief, 21st Mortgage received notice of Ashley's Second Experian Dispute as to the reporting the Account on Plaintiff Ashley's Experian consumer report.

148.    A reasonable investigation by Experian and 21st Mortgage would have indicated that they were reporting the Account inaccurately on Ashley's Experian consumer report.

149.    However, the inaccurate, incomplete, false, and/or misleading information continued to be reported on Plaintiff Ashley's Experian consumer report.

### The Continued Inaccurate Reporting of the Account after Plaintiff Ashley's Second Experian Dispute

150.    On or after August 19, 2021, Plaintiff Ashley again accessed her consumer report as published by Experian ("Ashley's August Experian Report").

151.    21st Mortgage and Experian failed to remove or correct the inaccurately and/or incompletely reported information contained on the Account.

152.    Instead, on Ashley's August Experian Report, 21st Mortgage and Experian continued to inaccurately and/or incompletely report the Account.

153.    Specifically, 21ˢᵗ Mortgage and Experian continued to report the Account with no balance or monthly payment amount, they continued to omit any payment history past the month the Bankruptcy Case was filed, and they continued to report the account as "Petition for Chapter 13 Bankruptcy/Never late".

154.    21ˢᵗ Mortgage and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of its reporting was to make it appear as if the Account had been or would be discharged through the Bankruptcy Case, that no balance or monthly payment was owed, and that Plaintiff Ashley had not made any payments since or before her Bankruptcy Case was filed.

155.    21ˢᵗ Mortgage and Experian's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Account were particularly egregious in that Ashley's Second Experian Dispute included supporting documents provided by 21ˢᵗ Mortgage which 21ˢᵗ Mortgage and Experian chose to ignore.

*The Impact of Inaccurate or Misleading Information on Consumer Reports*

156.    A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

       i.     credit or insurance to be used primarily for personal, family, or household purposes;

      ii.     employment purposes; or

     iii.     any other purpose authorized under section 1681b.

157.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and

personal characteristics of the consumer.

158. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. See https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*159.* The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. See https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

160. The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by credit reporting agencies. See, https://www.myfico.com/credit-education/credit-scores/.

161. Defendants' departures from the credit industry's own reporting standards have caused Plaintiffs' to suffer from reduced FICO credit scores.

162. The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id.*

163. The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. Consumer Financial Protection Bureau, *Supervision and Examination Manual, Version 2* (October 2012), p. 53, available

at  http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf, *archived at* http://perma.cc/JF32-RFAA.

164.  FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history is 35% of a consumer's FICO score; debt/amounts owed is 30% of a consumer's FICO score; age/length of credit history is 15% of a consumer's FICO score; new credit/recent inquiries is 10% of a consumer's FICO score; and mix of accounts/types of credit is 10% of a consumer's FICO score.  See,  https://www.myfico.com/credit-education/whats-in-your-credit-score/, *archived at* https://perma.cc/E8Y3-F4AA.

165.  Payment history is the most important aspect of a consumer's credit score because it shows how the consumer has managed his finances, including any late payments.

166.  Credit history is also very important, as it demonstrates how long the consumer has been managing his accounts, when his last payments were made, and any recent charges. See, https://www.transunion.com/credit-score, *archived at* https://perma.cc/NRZ4-W83U.

167.  The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extended financing periods and lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines, are all, by and large, driven by a consumer's credit score.

168.  Inaccurate or incorrect credit reporting very often results in a lower FICO and other credit scoring model scores, and thus higher costs of credit, diminished opportunity, and less purchasing power for consumers.

169.  Incorrectly reporting the tradeline associated with Plaintiffs' Mortgage—which is open,

active, and has a balance that Plaintiffs are making payments on—with no balance, payment data, and with bankruptcy information, adversely affects Plaintiffs' FICO scores, as it excludes any recent positive payment history associated with the Mortgage, it alters the age/length of credit history, and it alters the mix of accounts/types.

170.   There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score.

171.   For example, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's access to credit or the products and rates the consumer is able to secure.

172.   Consistent with FTC study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. See, https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/, archived at https://perma.cc/9TQN-S5WP.

### Defendants' Failures and Plaintiffs' Damages

173.   It is inaccurate, incomplete, and/or materially misleading to report a payment history with no data, which is factually incorrect and negatively reflects upon an individual consumer's credit profile by making it appear that the consumer has failed to satisfy and live up to their monthly credit obligations.

174.   It is inaccurate, incomplete, and/or materially misleading to report no balance data, which is factually incorrect and negatively reflects upon an individual consumer's credit profile by making it appear that the consumer has an account that will have no balance after a bankruptcy is complete.

175.   It is inaccurate, incomplete, and/or materially misleading to report that an account is included in and/or discharged in bankruptcy when no bankruptcy discharge has occurred.

176.   Reporting an account was "included in bankruptcy" has no meaningful different from reporting that an account was "discharged in bankruptcy"—that is, the phrases are viewed as having the same meaning.  *See Diaz v. Trans Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *7 (E.D. Cal. June 5, 2019) "Indeed, many courts considering this very issue have concluded that "[t]here is no meaningful difference between the phrase `included in bankruptcy' and the phrase `discharged in bankruptcy.'") (*citing Butler v. Equifax Info. Servs., LLC*, No. 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019); *Smith v. Trans Union, LLC*, No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

177.   It is inaccurate, incomplete, and/or materially misleading to report an account as Petition for Chapter 13 when the account was not included in a bankruptcy plan and instead is an account the consumer is paying directly to the creditor.

178.   As evidenced by Equifax and Experian's failures to correct the reporting of the 21st Mortgage Account despite knowledge of the active status of the Account and despite receiving Plaintiffs' respective disputes to Equifax and Experian, and the supporting documents attached to those disputes, Equifax and Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

179.   As evidenced by the inaccurate re-reporting after Plaintiffs sent Equifax and Experian

detailed disputes identifying the inaccurate information related to the Account, Defendants each respectively failed to conduct proper and reasonable investigations and/or reinvestigations concerning the inaccurate information after receiving notice of the disputes from Plaintiffs in violation of 15 U.S.C. §1681i and/or 15 U.S.C. § 1681s-2(b).

180. Defendants failed to review all relevant information provided by Plaintiffs in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

181. Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiffs' information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

182. Defendants' continued inaccurate and negative reporting of the Account in light of their knowledge of the actual error was willful. Plaintiffs are, accordingly, eligible for statutory damages.

183. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

184. Based upon Defendants' knowledge of the Account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

185. Also as a result of Defendants' continued inaccurate, incomplete, and/or materially misleading and negative reporting, Plaintiffs have suffered actual damages, including,

without limitation, fear of credit denials, actual credit denials, reduced credit scores, emotional distress, frustration, missed personal time in order to tend to this matter, vehicle operating costs for miles driving in order to tend to this matter, and inconvenience.

186.   By reporting account information inaccurately, incompletely, and/or in a materially misleading way, Defendants acts and omissions have resulted in the illegitimate suppression of Plaintiffs' FICO credit scores and other credit rating model scores.

187.   The adverse effect on Plaintiffs' credit score places Plaintiffs at the material risk of being denied credit or receiving less favorable credit terms than they otherwise would.

188.   The existence of consumer reports which inaccurately report an account associated with the Mortgage, and/or falsely suggest that the Mortgage has been discharged or is subject to discharge, make it inherently more difficult for Plaintiffs to refinance their Mortgage in the future.

189.   The inaccurate, incomplete, and/or materially misleading information negatively reflects upon Plaintiffs, Plaintiffs' credit repayment history, Plaintiffs' financial responsibility as debtors, and Plaintiffs' credit worthiness.

190.   Plaintiffs' Equifax and Experian consumer reports were published to third parties while the inaccurate, incomplete, and/or materially misleading information discussed herein was present on Plaintiff's Equifax and Experian consumer reports.

191.   Defendants thus defamed Plaintiffs by publishing inaccurate, incomplete, and/or materially misleading information to others.

192.   By reporting account information inaccurately, incompletely, and/or in a materially misleading way after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

**First Cause of Action**
**The Fair Credit Reporting Act**
**15 U.S.C. § 1681 *et seq*.**

193.   Plaintiffs repeat, re-allege, and incorporates by reference all above paragraphs as if fully set forth herein.

194.   The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

195.   As a result of each negligent violation of the FCRA, Plaintiffs are entitled to actual damages from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2).

196.   As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00 from each Defendant, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the Court may allow from each Defendant, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorney's fees from each Defendant, pursuant to 15 U.S.C. §1681n(a)(3).

197.   Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiffs that are outlined more fully above, and as a result, Defendants are liable to Plaintiffs for the full amount of statutory, actual, and punitive damages, along with attorney's fees and costs of litigation.

**Request for Jury Trial**

198.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

**Prayer For Relief**

Wherefore, Plaintiffs respectfully request the Court grant Plaintiffs the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiffs' actual damages from each Defendant;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiffs, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4. Punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2), from each Defendant;

5. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and/or 1681o(a)(2), from each Defendant; and

6. Any other relief the Court may deem just and proper.

Date: <u>December 6, 2021</u>                          Respectfully submitted,

<u>/s/ James R. Crump</u>
James R. Crump #78704
Ryan M. Callahan #25363
**Callahan Law Firm, LLC**
222 W. Gregory Blvd., Suite 210
Kansas City, MO 64114-1138
Ph: 816-822-4041
ryan@callahanlawkc.com
james@callahanlawkc.com
Attorneys for Plaintiff